UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH BLOODY311BLOOB@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | ) ) ) Case No. 2:21-mj-312-JHR ) ) Filed Under Seal ) |

**AFFIDAVIT IN SUPPORT OF**
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Timothy Kenty, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent ("SA") for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") assigned to the Portland, Maine Field Office. I have been employed as a SA with ATF since October 2014. Before that, I served as a SA for the United States Secret Service for four years and as a Police Officer for the United States Capitol Police for nearly four years.

Over the course of my career as a federal law enforcement officer, I have utilized various investigative tools and techniques, including the use of search warrants to locate evidence that is stored electronically.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.     Based on my training and experience and the facts set forth in this affidavit, there is probable cause to conclude that Tomas Johnson has committed multiple offenses including, but not limited to, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), and theft of a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 924(m). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offenses being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     ATF is conducting a criminal investigation of Tomas Johnson ("Johnson") regarding suspected narcotics- and firearms-related offenses. On October 28, 2021, members of ATF's Portland, Maine Field Office, assisted by members of local law enforcement, located and arrested Johnson, pursuant to an arrest warrant issued by this Court on a single-count criminal

complaint in Case No. 2:21-mj-00283-JHR, which charged Johnson with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

7. Prior to Johnson's arrest, ATF SA Concannon obtained Johnson's phone number from Person One. Person One stated that Person One had seen Johnson within the past few days and that Person One had spoken with Johnson on this phone number the previous day. The phone number Person One provided for Johnson was (207) 891-9024.

8. Detective Gagnon with the Auburn Police Department called (207) 891-9024 and spoke with a man. During this telephone conversation, Detective Gagnon, posing as a drug user named Doug, asked about purchasing a small amount of crack cocaine from the man. The man agreed to meet Doug to complete the drug transaction near the intersection of Ash Street and Pierce Street in Lewiston, Maine.

9. While conducting surveillance in the area of Ash Street and Pierce Street in Lewiston, Maine, ATF SA Concannon and I observed a man matching Johnson's physical description who was later confirmed to be Johnson. As ATF SA Concannon and I exited our vehicle, Johnson fled on foot toward Bartlett Street. Johnson was quickly apprehended by members of ATF's Portland, Maine Field Office. Before performing a search incident to arrest, a member of ATF asked Johnson whether he had any weapons or sharp objects in his pockets. Johnson responded, "no weapons, just drugs, just drugs." During the search incident to arrest, a member of ATF recovered an Android cellular telephone and a plastic baggie containing a small amount of suspected crack cocaine from Johnson's sweatshirt pocket. Following Johnson's arrest, members of law enforcement also recovered a firearm from the area where Johnson was apprehended. The recovered firearm was a loaded Glock, model 23, .40 caliber pistol, bearing serial number

AGAT341. The recovered firearm was confirmed to be one of several firearms that were stolen during the October 24, 2021 burglary of JT Reid's Guns and Cigars ("the gun store"), which is a federally licensed firearms dealer located in Auburn, Maine.

10. During a post-*Miranda* interview, Johnson admitted that he was in the area to complete the drug transaction with Doug and that he discarded the firearm that law enforcement subsequently recovered while he was attempting to flee from law enforcement.

11. Johnson gave conflicting statements about whether he owned the cellular telephone found on his person at the time of his arrest. At one point Johnson said that he traded "a hit of crack" in exchange for the cellular telephone. At another point Johnson said that he was only renting the cellular telephone. In either case, Johnson acknowledged that he had been using the cellular telephone for approximately one week. Johnson admitted that he used the cellular telephone to arrange the drug transaction with Doug earlier that day. Johnson also admitted that he used the cellular telephone to coordinate other drug transactions.

12. In addition, Johnson admitted to stealing one firearm from the gun store on October 20, 2021, but Johnson denied stealing multiple firearms as part of the gun store burglary that took place on October 24, 2021. According to Johnson, on October 20, 2021, he took one firearm from a display case and placed it in his pocket before leaving the gun store. Johnson further stated that he used a cellular telephone to take photographs of a firearm during his visit to the gun store on October 20, 2021. When asked whether he used the cellular telephone found on his person at the time of his arrest to take these photographs, Johnson responded, "I don't know, check it." Johnson recalled handling another firearm during his visit to the gun store on October 20, 2021. Johnson stated that if the photographs were not found on the cellular telephone found on his person at the

time of his arrest, they would be located on his Google account. Johnson provided the email address associated with his Google account as bloody311bloob@gmail.com.

13. Johnson acknowledged that he is a felon and that he is not able to lawfully possess firearms. When asked how much time he served in prison, Johnson said "too much." Johnson added that he was most recently incarcerated for his involvement in a gun store burglary and that he served approximately three years in prison for this offense. Johnson also acknowledged that he struggled with substance abuse issues and that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year.

14. Following Johnson's arrest, I noticed that the shoes Johnson was wearing when he was arrested were very similar in appearance to the shoes worn by the suspect captured on video surveillance footage during the burglary of the gun store on October 24, 2021. Photos of the shoes worn by Johnson when he was arrested are inserted below for reference:





15. Still photos of video surveillance footage at the gun store showing the shoes worn by the burglary suspect on October 24, 2021 are inserted below for reference:





16. On November 5, 2021, I obtained a search warrant for the cellular telephone found on Johnson's person at the time of his arrest from this Court in Case No. 2:21-mj-292-JHR. In

accordance with the search warrant, the New England Regional Computer Forensics Laboratory subsequently completed a forensic report about the contents of the cellular telephone. I reviewed the forensic report. My review of the forensic report revealed that the cellular telephone was using the Android operating system for mobile devices, and the Google account information related to email address bloody311bloob@gmail.com was saved under the section entitled "User Accounts." My review of the forensic report also revealed that the user of the cellular telephone conducted internet searches on October 23, 2021, which was one day before the gun store burglary occurred, for JT Reid's Guns & Cigars, which was the location of the gun store burglary.

17. I also reviewed information sought and obtained from Google in response to a subpoena for the Google account information for bloody311bloob@gmail.com, which was created on October 16, 2021. According to the information provided by Google, the username affiliated with bloody311bloob@gmail.com was "Christoher Hicks" and the recovery email affiliated with bloody311bloob@gmail.com was hickschristopher959@gmail.com. Based on my direct involvement in this investigation, I know that Christopher Hicks is a name that Johnson has used.

18. According to the activity information provided by Google, there were 22 logins by bloody311bloob@gmail.com between October 19, 2021 and October 28, 2021. Based on my direct involvement in this investigation, I know that (a) Johnson is suspected to have been involved in additional criminal activity related to his possession and use of a firearm on October 19, 2021; (b) October 20, 2021 is the date on which Johnson not only admitted that he photographed a firearm while inside the gun store, but he also admitted that he stole a firearm from the gun store; and (c) October 28, 2021 is the date on which Johnson was arrested while in possession of a firearm that was later confirmed to be one of several firearms that were stolen during the gun store burglary.

19. According to the information provided by Google, the services affiliated with the Google account for bloody311bloob@gmail.com include, but are not limited to, the following: Web & App Activity, Location History, Android, and Google Keep.

20. In view the foregoing facts, there is probable cause to believe that the Google account for bloody311bloob@gmail.com contains evidence of suspected criminal violations involving Johnson including, but not limited to, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), and theft of a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 924(m). To preserve any such evidence in Google's possession, a preservation letter was sent to Google on November 18, 2021.

## BACKGROUND CONCERNING GOOGLE[1]

21. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether they have a Google Account, a free web browser called Google Chrome,

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com. To the extent practicable, the information in this section is limited to the particular services that Google previously identified as being affiliated with the Google account for bloody311bloob@gmail.com.

a free search engine called Google Search, and a free mapping service called Google Maps. Many of these free services offer additional functionality if the user signs into their Google Account.

22.     In addition, Google offers an operating system for mobile devices, including cellular phones, known as Android. Users of Android devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the login username for access to the Google Account.

23.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, some of which are described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, also described below. All may be sought using a Google email address, including the domain name, as an identifier; additional identifiers relevant to particular services are included below:

  a.     **Web & App Activity**: Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account. Google also has the

capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, and ads clicked. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

      b.      **Location History**: Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity.

Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

  c. **Android, Google Drive, and Google Keep**: Google Drive is a cloud storage service automatically created for each Google Account. Users can upload files to Google Drive, including photos and videos, until they hit the storage limit. Users can set up their device to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan. Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them. Android device users can use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages.

24. When individuals register for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name and telephone number. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile

application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

25. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under Google's control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

26. Based on my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files, records, and services described above. This evidence may establish the "who, what, why, when, where, and how" of the crimes under investigation, thus enabling the government to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

27. Based on my training and experience, photos, videos, location history, and web & app activity are often created and used in furtherance of criminal activity, including to communicate and facilitate the crimes under investigation. Thus, stored files and records connected to a Google Account may provide evidence of these crimes.

28. In addition, the user's account activity, logs, and other data retained by Google can indicate who used or controlled the account. This "user attribution" evidence is analogous to the

search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, photos, and videos (and the data associated with the foregoing, such as geolocation, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which devices were used to access the Google account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

29.     Account activity also may provide relevant insight into the account owner's state of mind as it relates to the crimes under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting certain information in an effort to conceal evidence from law enforcement).

30.     Therefore, Google's servers are likely to contain stored information concerning the Google account associated with bloody311bloob@gmail.com and the account holder's use of certain Google services. Based on my training and experience, such information may constitute evidence of the crimes for which Johnson is currently under investigation including, but not limited to, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), and theft of a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 924(m).

## CONCLUSION

31. Based on the foregoing, I request that the Court issue the proposed search warrant.

32. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Timothy Kenty, Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Dec 07 2021

City and state: Portland, ME

_____
John H. Rich III, U.S. Magistrate Judge
*Printed name and title*

15